I believe that the first counsel who should be arguing is Mr. I hope I'm pronouncing right Mr. Keim. We have you here? Did I pronounce? That's correct your honor. Did I get it right? Yes your honor it's Keim. Oh great. Terrific. So Mr. Keim you're gonna go first. Mr. White you'll go second. Mr. Lawless you'll go third. All right. And Mr. Keim if you could just as part of your presentation today just clarify what issues in this case are the same as the one we just heard and I know there's one that's different. Right. Very well. May it please the court my name is Tom Keim and I represent the petitioner hospitals in this case. I'd like to reserve five minutes for rebuttal. Very well. I'll pay attention to the to the timer. So the key difference in this case versus the first case is the fact that the written authorization for dues deductions in this case did not comply with federal criminal statute section 302 c4 of the Labor Management Relations Act. That's 29 USC section 186 c4. The criminal statute which the parties agree is subject to de novo review by the court provides what is necessary for an employer to deduct money from an employee's paycheck and remit it to the union representing dues payments. The statute states as an exception to the general prohibition that such a deduction is possible and legal if the employer has received from each employee on whose account such deductions are made a written assignment which shall not be irrevocable for a period of more than one year or beyond the termination date of the applicable collective agreement whichever occurs sooner. The authorization in this case at issue does not provide for the revocation upon expiration of the collective bargaining agreement. The authorization simply says that the authorization shall remain in effect and shall be irrevocable unless revoked in writing to both the employer and the union a registered letter during the period October 1 to October 15 on each year of the agreement and shall be automatically renewed as an irrevocable check off from year to year unless revoked as herein above provided irrespective of whether I am a union member. So not only does it fail to contain the language that it's revocable upon expiration, it specifically provides that it's only revocable annually. And our position and the problems with the authorization has notified the union of its intent to stop dues deductions in order to not violate a federal criminal statute. The purpose of these statutes is to protect employees from the abuse or potential abuse of employers and labor organizations that enter into sweetheart deals or arrangements which take advantage of employees. The Congress could have made this only an unfair labor practice if the statute was violated. But they didn't. They went further and they found that it was more than an unfair labor practice. In fact, it was a violation of criminal law. So the the union and stopped the dues deduction. As part of that notification, the hospitals requested authority, contrary authority, explaining that the authorizations were valid. They also agreed to deduct dues upon receipt of a valid authorization and, in fact, provided an authorization for this labor organization that it had obtained. And the union, under the expired agreement, had access to the hospital, access to meeting rooms, access to every break room, access to the cafeteria and access to bulletin boards in order to obtain new authorizations. So our position is to deduct dues would have violated the statute. Our second position is we had no obligation to bargain about whether this document was valid because it wasn't. And the purpose of bargaining about something that you can't agree to so there's no purpose and there's no obligation to do so. Council, what precisely, excuse me, Council, what was what precisely was missing in the authorization? What language would have resolved this question? The language that would have resolved it is the language straight from the statute, which provides that an employee, an employee's authorization is irrevocable except upon expiration or the termination date is what the language of the statute says that the termination date of the applicable collective agreement. So employees in this authorization were not notified that they could revoke upon expiration of the collective bargaining agreement. And in this case, the revocation periods in the authorization of October 1 to October 15, the annual revocation period, did not coincide with the expiration of the collective bargaining agreements, which was in late spring. So the employees had no notice whatsoever of a right to revoke their authorization as required by the statute. Does the statute require that the authorization form includes such notice? Our position is it clearly does because it's specific and it's for the protection of the employee. The employee has a very limited opportunity to get out of this authorization. It has to do so at least annually and upon expiration of the agreement. The deduction is valid whether the employee is a member of the union or not. So the employee should be on notice of all of the employee's rights. That's the key here. This applies to employee rights, and it's a protection to prevent abuse. Excuse me, one other question. C5, 302C5, expressly requires such a writing in other situations, but there's no such requirement in 4. What should we make of that? Well, the documents that pertain to the authorization, the authorization forms are one or two paragraphs. So it's not like there's not requirements listed, and the employer does have to receive a written assignment. The employer has to receive a written assignment, so it has to be in writing. The 5 applies to more protection plans and welfare benefit plans, things that have many more aspects to them to comply with law. So our position is the reason that subparagraph is so much longer is that the documents are so much longer, but our position also is if you look at the total length of a document, there's as many or more requirements per paragraph for the authorization than there is for these benefit plans. Yeah, counsel, one question for you is this, and I'm going to ask government counsel the same question. There is a case from 1959 called Felter v. Southern Now, it's a different labor statute, but it's in the ballpark, and there that case seemed to suggest that even though the checkoff assignment revocation didn't have all the right language in it, it was still valid. And I didn't see this case cited by either party, and so I'm not expecting you to know it off the top of your head, but you may want to take a look at that case, and we do have a 28J letter where you can submit supplemental authority. Again, it's Felter v. Southern Pacific, 359 U.S. 326, and then that case. Anyway, so just that case is in my mind. I'm not expecting you to know it off the top of your head, but after arguing, you may want to submit something on that case. Okay, Your Honor, I would say that's a Railway Labor Act case, and I don't know if there's a corresponding criminal statute that applies to the Railway Labor Act as opposed to the forum we're in, which is the National Labor Relations Act and the NLRB instead of the Railway Labor Act. But I appreciate the court bringing that to our attention, and we will definitely look at that. Yeah, fair enough. Did you want to reserve your time? Uh, yes, Your Honor. Very well. You may proceed, Counsel. Thank you, Your Honor. I'll pause just at the outset of the argument here to note that there is substantial overlap between these two cases because I'll refer to the second cases. The board's decision is Desert Springs to this involved application of the rule we were just discussing in Valley Hospital, too, and the employers in this case raised largely identical or the same arguments both before the board in this court. And so I will pause just to ask if the court has any questions about the merits of the board's Valley Hospital to rule. I take it that the employers have not have not presented any objection to the actual substance of the board's decision before the court today. But I did want to give the court an opportunity if it has any questions, um, about the substance of the board's rule. Um, and if not, I can turn to the second issue, which is unique to Desert Springs to which, as my opposing counsel was just discussing, is this question of whether the employers were privileged to unilaterally stop deducting herself to check off based on their their interpretation of Section 302 C four and their statement to the union that they thought the actual authorization forms were unlawful. The reasons why that argument fails in this case and why this was an unfair labor practice. First, the board interpreting the plain language of Section 302 C four concluded quite reasonably that nothing in that statute contains or indicates that there is an affirmative notice requirement such that an individual employee's authorization is only valid and only permits an employer to transmit union dues. If the actual authorization contains language affirming the employee's rights under Section two C four, the employers have not cited any case, either an agency case or a criminal case against an employer. I'm certainly unaware of none in the history of the statute where that was the that was held that these that this was a criminal violation of defect in the wording of your authorization forms. As the board explained, that's also consistent with the plain language of Section 302 C four. This court, I think, has held that all 302 C four stands for is that in order to have a valid dues check off payment from an employer to reunion, you need to have authorizations from that individual employee. That's what the then the statute goes on to affirm that employees have a right under Section 302 C four to revoke their authorization during two specific windows first on the anniversary one year anniversary. Um, and secondly, when a contract expires. So the board noted here that regardless of whether employees are told about those rights in the authorization form that they sign, they still have those rights. Um, and they can still revoke, and the employer needs to honor that revocation under 302 C four to your honors question about the filter case. I did actually look at that case in preparing for the arguments today. I don't wanna, um, claim to be too well versed in the case, but I would note that in the Supreme Court's opinion and filter, it did note that the legislative history of the Railway Labor Act and the L. M. R. A. On this point suggests that Congress had similar intentions in mind, and I agree with your honors reading a filter that the Supreme Court there noted, I think, specifically that employees cannot waive their revocation rights regardless of the content of an authorization and that they retain those revocation rights regardless of specific wording. So I think at the end of the day, the board's position is very simple as to this first aspect of aspect of its decision, which is that 302 C four simply does not require affirmative notice to employees affirming their statutory rights on. There's no authority to the contrary that I'm aware of. I'd also note that just based on the specific facts of this case, the board offered a reasonable reading of these authorization forms, which is that simply because they're they refer to the revocation rights and prescribe a window for the yearly revocation, and they simply say nothing about the end of contract revocation and under established precedent with when one of these authorization forms is silent, it's presumed to be at will revocation. And so the board offered that as a reasonable reading here. Certainly, that undercuts the employer's argument. Given the context where this issue is arising, which is a question of whether the employers were entitled to disregard their statutory obligation to bargain with the union before unilaterally ceasing these dues check off arrangements. If there's any ambiguity, that certainly undermines that. But the board also found conclusively that 302 simply does not require this, that these forms did not violate 302 C four. And I'd also note that 302 C four is a criminal statute. And so under normal principles of interpretation, I think it's reasonable to not interpret that provision as though Congress was making it a criminal violation for an employer to transmit dues when there is a defect, simply a defect in the writing of the revocation form. Here, there's no evidence that any employee attempted to revoke their dues check off arrangement or that that was not honored if they had attempted to do so. And turning to the second independent basis for the board's decision under existing board precedent, which was reaffirmed here, even if an employer is correct or has a credible argument that these forms violated 302, that does not per se, relieve it of its obligations to bargain under the act or allow it to unilaterally cease dues check off or as the union with an ultimatum that if the union did not come up with new forms within five days or provide, um, case authority to the employer satisfaction that they were going to simply terminate this long standing arrangement. The duty to bargain is a duty to meet and confer in good faith and to discuss the issue with the union as the employees representative and to come to potential solutions that would ameliorate some of the employers proper concerns. And the board outlined some of those potential solutions in his decision. None of that bargaining occurred here, so we don't know how the parties might have resolved this sort short of simply unilaterals termination of the dues check off arrangements. I'd also note that the employers in their briefs, um, make a great deal of claiming that they were acting in good faith and that they were doing the best they could. That's, I would say, wrong for the reasons I just which which might have, um, assuage their concerns, alleged concerns that they would be in violation of 302 C four if they made another payment to the union. But number two, the board also made a specific finding of fact in this case that given all of the surrounding circumstances, this appeared to be a pretextual concern proffered by the employers in the midst of contentious successor contract bargaining and that the employers did not have a legitimate concern about the awfulness of these forms. I'd also note that in Valley Hospital, excuse me, Desert Springs one, which is not back before the court. But in that case, the board found a host of other unfair labor practices around the same time, which the employers have not contested and are not at issue. But I think that underscores the board's factual finding that here this is was simply pretext because the employers were trying to gain leverage in bargaining with the the employers had been complying with for many years without evident qualms about the wording of the authorization forms, which the employers presumably reviewed when this relationship was first established. And if there aren't any further questions, I'm happy to rest there and simply ask for enforcement. Okay, no further questions. Thank you very much, Mr Weiss for doing double duty. Thank you. Good afternoon, Your Honors. My name is Jonah Lawless, and I represent service employees, International Union, Local 1107. And I want to focus on three points for my limited time here, starting with with the elephant in the room, which which the hospitals devoted six lines of their opening brief to. And that is this court's decision in 2011, authored by Judge Paez, Local Joint Executive Board versus NLRB. I refer to it in my brief as LJEB 3. And in that case, this court said that that the Bethlehem Steel rule that permits employers to end dues checkoff upon expiration of a collective bargaining agreement, that doesn't apply to states where there is a where where there is no union security clause. In other words, the the remedy that the hospital seek here, which is applying Bethlehem Steel to the state of Nevada, is precluded by Ninth Circuit authority. So what they're asking for is simply unreasonable. It contravenes this court's precedent. The second point that I want to highlight was was actually it was brought to my attention by by questioning from from Judge O'Scanlan, which in which you asked in the first case that your memorandum of disposition said that the board could change its position. And that and that is and that is true. That is what your decision said. And you're also correct that that what the hospitals in effect are doing is they're asking you all to reinterpret your own decision. And that that doesn't make any sense. But just to reassure you, in my in my brief on pages 19 with the the blue bait stamp at the top, I did give a few examples of instances where the Court of Appeals has found flaws in the board's decision and remanded it without vacatur. The hospitals make a big deal that there was no vacatur in this case. And I'm not going to belabor the point about this court's not wanting to disrupt the flow of the administrative agency. But in one of the cases that I cited, just as an example, it's Randall Warehouse of NLRB 252 F 3rd 445. It's a D. C. Circuit case from 2001. But there the Court of Appeal was reviewing a board decision where they found that the union was taking photographs and allegedly surveilling employees during a campaign. And what the board said in Randall one was that was not a other board precedent that found that when it's an employer that's taking those photographs that that was a problem and that the board failed to recognize the reconcile those two decisions. And so what they did is the D. C. Circuit remanded this decision again without vacatur and the board changed its mind. And that's that's a common occurrence. And that's exactly what what happened here in this particular case. The third point that I want to you of Section 302. Um, in particular, what the hospitals are asking is they're asking this court to decide a case of first impression and under this court's precedent under fund bus systems 801 F 2nd 11 20. That's a nine story case from 1986 on cases of first impression when when the court is being asked to interpret a statute, you need to start with the plain language and then look at legislative history and then look at the interpretation of an administrative agency. And what what the hospitals provided with you is no, no judicial authority, no board decision, no treatise, no, no law review article. All they cite to is, um, Judge O'Scallion pointed out earlier is is a this statute, especially when, as my, um, as the board pointed out, the plain language is clear. There is no notice requirement. Um, finally, what this comes down to really is the unions in order to have resources, they need to collect dues a little bit from everybody so that they can have what it takes to, um, to bargain collectively. And that's what the employer sought to undercut here. Thank you. Thank you very much. Council. We have some rebuttal time and you may proceed when you're ready. Thank you, Your Honor. I think my co council in the first case adequately dealt with the L. J. E. B. Issue. But I would mention that that case decision in that case was was limited. The law of the case decision was vacated. It did not prevent this panel from issuing his decision in Valley Hospital one. And and therefore, uh, you know, our view is that that case is in deposit to the case before the court today. Um, I'd also point out my recollection is Randall Randall Warehouse case is a D. C. Circuit case, which applies a different standard versus a jurisdictional standard applies a lot of the case standard. So again, that really goes back to the issues in the in the first case. I'm happy to answer any additional questions with regard to the section 304 issue or the other issues issue unique to the second case. Further judges? No. No further questions unless you have anything else want to present. It's up to you, Council. No, that's fine, Your Honor. I think it has been well briefed in and argued by the parties and and I'm fine, too. Not just ramble on. Thank you. I thank you for that. And I agree. I want to thank all the council in this case for outstanding briefing. Outstanding argument. Very, very solid by everybody, which is always good, especially when we have a visitor from the Seventh Circuit on DSO. With that, this matter is submitted and this particular panel is adjourned. Thank you. All rise. This court for this session stands adjourned.
judges: O'SCANNLAIN, OWENS, Kennelly